I'm the appellant in this matter, and this is a case where the trial court abused its discretion in imposing sanctions. And it's clear that there was an abuse of discretion because the factual record was inaccurate that the court relied upon, and the legal standard that the court used, both to determine the liability under the underlying claim, as well as for the legal standard with regard to the imposition of sanctions. I wanted to concentrate on the liability that the court found on the underlying case, specifically that there was no factual or legal basis to prosecute the claim. This is clearly inaccurate, and I think the – I guess one question is how did it come about that the court made the ruling? And I would note that at the summary judgment stage, the court in that opinion did not consider any of the facts or the law that was submitted by the plaintiff. And, of course, I was the attorney for the plaintiff in the summary judgment motion. The court did not consider any of the facts or the evidence that set forth in its opinion. It just relied upon what the defendant provided. Isn't it true that Mr. Saperstein testified that Cotterill had a timely court hearing on August the 1st of 2006? He had certified her continued detention? Well, not accurate. Isn't that what happened? I mean, I kind of looked at the deposition. What Saperstein stated in his deposition is that on the time that there was supposed to be a hearing, he was on vacation. And so they had a substitute commissioner who Judge Saperstein indicated conducted a certification hearing. So he didn't have any personal knowledge as to what happened at that time. Then what Judge Saperstein noted was that because there were some problems with that hearing, he then altered the records to indicate that there was no hearing on that date, and then conducted a hearing on the 8th to make the record appear as if there was only one hearing. Now, and that is kind of consistent with what the plaintiff has indicated. There was no hearing on the first date. The plaintiff had no knowledge of that. The problem with this case is that the defendants in this case failed to document the records, and they seem to have had a specific purpose in not documenting the records so that they could alter it. Their whole position, and I think Dr. Leary's letter to the plaintiff in this matter is very significant because he indicated to the plaintiff when she was inquiring what happened that there was no hearing on August 1st, I believe it was, on the 1st. He indicated there was none. Then the lawsuit was filed, and her mother, the plaintiff's mother, brought this concern to our licensing division for the state of California. And the state of California then imposed sanctions. They did an investigation, and they determined that there was no hearing. And once the state imposed sanctions, that's when Judge Saperstein, with Dr. Leary in the administration at the hospital, then changed their story. They said, well, actually there was a hearing, and this was to escape punishment from the state. So the county, with the Regents of the University of California, successfully deceived the plaintiff and the state of California. And only when they got caught did they then say, well, there was a hearing. Now, we contend that whatever we call this first hearing, it was woefully inadequate because there was, in fact, no hearing. She wasn't there. She has a right under the code to be there. She has a right under the code to get notice of the hearing. And they claim that they did not give her notice of the result of the hearing on the first hearing. Let me move to the state defendants. As I read the third amended complaint, it suggests that you're requesting an award of compensatory damages according to proof of trial and punitive damages according to proof of trial, but not against any public entity. That is correct. Punitive damage complaint complies with the Supreme Court precedent regarding the government entities and the punitive damage. But doesn't that language mean that Cotterill is seeking compensatory damages from the public entity? Well, if there's any confusion with regard to whether the plaintiff counsel or plaintiff counsel. I'm just reading the language. Well, if there was some confusion on the language, all parties understood that I was not seeking damages against any public entity. So there may have been. Well, a public entity, you'd know that it'd be barred by the 11th Amendment, correct? Well, the. Well, not actually. But the 11th Amendment doesn't bar the. Well, it. Compensatory damages. It bars, yes. Compensatory damages, it does. All right. Let me ask you another question. Where in the Third Amendment complaint does it say that the individual region defendants were being sued in their individual capacity? Well, it. It doesn't say it, does it? Well, it's not required to specifically state that they're being sued. If there's any question as to whether or not they're being sued in their individual capacity or not, it's assumed that they're being sued in their individual capacity. Well, that's not exactly what Porter v. Jones says, is it? No. Porter v. Jones, which is our case in 2003, says that when the plaintiffs add the language in their individual capacity to the complaint, then the 11th Amendment does not bar the complaint. Well, it wasn't added here, does it, was it? I have to review that, but I believe that it was clear that they were being sued in their individual capacity. But more importantly, the court ruled that whether it was the individual capacity or not, they could not be sued. So it became irrelevant in terms of any amendment. That's why it wasn't amended. The court said that unless they could prove that it was outside of their professional capacity, then he would not allow an amendment. And therefore, I did not amend the complaint to further clarify that, because the court had ruled that the individual employees were barred by the 11th Amendment, which is contrary to Supreme Court precedent. Now, then during the course of the event, other things happened, but it was not amended with regard to some of the individuals, because the court had indicated that it was not going to allow any type of 11th Amendment unless it was outside of their professional capacity. And then there was an amendment to include outside of the professional capacity for specific doctors on specific claims. But for the most part, the individual doctors were, under the court's ruling, under the 11th Amendment, barred. But then there was the issue with regard to the waiver and other issues that came up. So, you know, the idea that the 11th Amendment bars the claim, I think, is clear legal error. And the fact that the regents of the University of California don't even argue that on appeal is evident that, in fact, that was, in fact, a clear error. Well, but didn't you make a statement in the Joint Case Management Statement filed October 3rd, 2008, that the regents' defendant's 1983 claims have been dismissed under the 11th Amendment? The certain claims the court did dismiss, but there are not. The statement that I read filed October 3rd, 2008. Well, the court did dismiss certain, the individual claims for the 1983 claims. The court did do that. And but it allowed an amendment and some were amended. And it dismissed certain claims. For example, it didn't dismiss the claims for injunctive relief. So that was still pending. And then that was subsequently dismissed in a subsequent motion. Your time is up, but let me pose one particular question. You've argued, over here, you've argued that the court should have considered ability to pay. What evidence is there in the record of your inability to pay? Well, there's in it, there's the record, there's a declaration indicating the lack of minimum income. So you submitted a declaration? Yes, I did. Thank you. Thank you. May it please the Court. James Hanawalt of the San Francisco City Attorney's Office on behalf of city appellees. I would like to divide the appellee's time in equal shares with counsel for the U.C. Regents. So I'll be speaking for five minutes, and five minutes are reserved for counsel for the Regents. This appeal is about whether the trial court abused its discretion in sanctioning appellant for vexatiously multiplying the proceedings in the trial court. Two judges, Magistrate Judge Larson and Trial Judge Jeffrey White, both reviewed the extensive record in this case. Both judges found that appellant recklessly expanded the litigation after the factual record established there was probable cause for the 5150 detention and that, in fact, a 5250 hearing did take place on August 1, 2006. These facts established that there was no constitutional violation by any of the city appellees. An objectively reasonable attorney at that point would have either dismissed the case or negotiated a graceful exit. Instead, what appellant did was to expand the case and to name new city defendants all the way to its top policymakers, including the mayor, the police chief, the director of public health, the public defender, and even a hospital risk manager. By expanding the litigation, the appellant failed his obligations to his client and his public resources used to defend the frivolous claims. Judge White at the trial court applied the proper legal standard for sanctions under 1927. Is it your position that the trial court has discretion to reduce an award based on indigency or unavailability of funds, or that that's a mandatory prohibition, that he is not allowed to do it within his discretion? I don't believe we took a position on that. The trial court did not indicate whether that was the basis for the final number. Instead, what the court did was to adopt the Seventh Circuit's position in viewing 1927 sanctions as a form of intentional tort. And what is the Seventh Circuit's position? The Seventh Circuit in Shales v. General Chauffeurs found that the sanction is compensatory rather than punitive. And in that case, the Court said that if there was an inability to pay, that that could be discharged in bankruptcy. So I would infer from that that they viewed it as mandatory. However, Judge White also found that, as a factual matter, the declaration that was referred to by appellant in answer to the last question by the judge on appellant's opening statement, Judge White found that that declaration was insufficient because it was conclusory. There were no documents verifying the indigency. It was just a bald-faced statement that he would not be able to pay without any evidence backing it up. So the Court found that the Seventh Circuit's position in viewing 1927 sanctions  So I would infer from that that the Court said that if there was an inability to pay, that that could be discharged in bankruptcy. So the Court found that that declaration was insufficient because it was conclusory. However, Judge White found that there was a reduction of the sanction award based on the inability to pay. Based on what? Based on an inability to pay. That's what he did by adopting the Seventh Circuit's position. He did. Because the Seventh Circuit's position is that, that you must have it in sufficient evidence. It's not that there's no discretion to reduce it, that you have to go into bankruptcy. I believe the Seventh Circuit's position, Your Honor, was that the structure or the purpose of the statute is to compensate the injured party, in this case the public entities, which had to expend hundreds of thousands of dollars. Now, don't give me a long speech about how much money. I asked you what the position of shaleless is. The position of shaleless is that you compensate the injured party. And that it's like a tort in which you don't consider the effect on the tort fee. Correct. You only consider the effect on the injured party. Correct. And therefore, you don't have discretion to reduce the amount. I don't know whether the Seventh Circuit would view it that way. You can't understand what Judge Easterbrook was saying when he talked about he's not a good enough lawyer to get clients, he's got to get out of the business. All right. That's the end of my questions on that subject. Thank you, Your Honor. I would point out that the trial court made specific findings with regard to the multiplication of this proceeding. There were hours and hours spent on the so-called code red policy, which had nothing to do with this case. There were hours and hours spent with regard to the city's policy regarding the mentally ill homeless. There were discovery abuses, late filings. And my time is up, but I would also point out that even on this opening statement by appellant, there were misrepresentations made to this court. Judge Saperstein never said anything about problems with the August 1st hearing. What he did was grant a favor to the public defender of the public hearing. Thank you, Your Honor. May it please the Court. My name is Wesley Pratt, and I represent the Regents of the University of California and various individually named defendants who were sued in this matter. At the outset, it is the Regents' position that is what is on appeal here today is the award of sanctions that was imposed by the district court. The only issue that really survives on appeal is the propriety of the monetary sanctions that has been awarded in favor of the defendants and against Mr. Haynes. In fact, the notice of appeal in this case makes clear it was filed on June 10, 2009. You're using a lot of your limited time. I'm not sure what the point is. What do you say is not before us? Well, because Mr. Haynes spent a considerable amount of time discussing the underlying matter. Well, he's trying to justify his position. I don't think any of us think that we're about to revive the underlying lawsuit. So if that's your concern, I don't know that you need to spend much more time on that. Okay. With respect to Judge Smith's concerns with respect or questions with respect to the individually named defendants, I would respectfully remind everyone here that Mr. Haynes and his client was afforded an opportunity to amend his complaint, and he didn't do so. He the what district court did in sustaining the Rule 12 motion was afforded Ms. Cotterill and Mr. Haynes up until September 2, 2008, to file an amended complaint, and that didn't happen. I think that the 1983 actions were abandoned. More importantly, this case was factually unprovable at a date certain. And I think this dovetails into Judge Reinhart's question regarding discretion. I think that the district court had discretion to decide at what point any reasonable attorney would change their position and advise their client accordingly as to whether the case was worth pursuing. And I think that the two depositions of Nurse Asher coupled with the deposition of Judge Saperstein made clear that there was no violation of law, and in fact, that Ms. Cotterill had received two probable cause hearings. In terms of the ability to pay, I don't know that the Ninth Circuit has spoken on that issue, and that's what the judge said. We had not spoken, and therefore, he wanted to adopt or did adopt for us the Seventh Circuit view. Do you have any doubt what Judge Easterbrook's position was? I believe that the Judge Easterbrook indicated that there was some discretion. That there was or wasn't discretion? There was discretion. Yes. All right. Well, I guess we have a little difficulty in reading Judge Easterbrook, which would be a little difficult to read, even though he tried very hard to say it in plain English so that nobody would misunderstand him. One of us does. I apologize for my mistake. You don't have to apologize for that. We didn't say which one of us does. I'll have to tell Judge Easterbrook that he had better learn how to write more clearly. If you have any specific questions, I would be glad to answer them, but I think that the paper speaks for themselves. I think that this is a case that was vexatiously and unrealistically and improperly pursued, well beyond the time that it ever should have been pursued. And I think the papers are clear on that point. But with that being said, if there are any specific questions, I'd be glad to answer them. Otherwise, I'll sit down. Thank you very much, Your Honors. I believe my time has expired. You have 23 seconds. Well, then I would just note, you know, the court does indicate that the plaintiff has not set forth any facts indicating that the individual defendants acted outside the course and scope of their employment. And that's why it was not amended with regard to the individual defendants. Because I believe that each of the causes of action had merit, and I stand on them. I just want to make this one point. The trial court in the summary judgment didn't consider the facts and the law as set forth by the plaintiff in the report and recommendation by Judge Larson. Rather than do an independent evaluation as to what the facts were, it simply adopted the facts as set forth in the summary judgment. We believe that there's an abuse of discretion, there was an incorrect legal standard, and the facts as set forth by the plaintiff were not considered, including the unreasonable entry into the home, and there was a factual dispute as to whether the officers rushed in and frightened her or, as they say, they just knocked on the door and then she just acted up. So we believe there's a strong factual dispute and that the claims were warranted. Thank you, counsel.
judges: Reinhardt, Clifton, Smith